**C. W. McVEY, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Oct. 15, 1954.

Lewis A. White, Mt. Sterling, for appellant.

J. D. Buckman, Jr., Atty. Gen., Zeb A. Stewart, Asst. Atty. Gen., for appellee.

MILLIKEN, Justice.

This is an appeal from a judgment sentencing the appellant to three years' imprisonment for grand larceny. It is contended that the trial court erred in not directing a verdict of not guilty at the close of the evidence introduced by the Commonwealth, and that the instructions to the jury were erroneous.

The record discloses the following facts: The prosecuting witness, J. J. Perry, arrived in Mt. Sterling, Kentucky, on Sunday, November 1, 1953, and began to search for living quarters. During his search he encountered the appellant, C. W. McVey, Bramblet Jones and two colored men and inquired of them as to where he might obtain some whisky. One of the colored men informed him that he could get the desired whisky, and Perry gave him a $20 bill for such a purpose. Two half-pints of whisky and possibly two pints of wine were obtained and consumed by the parties. Later in the afternoon one of the residents of the neighborhood discovered Perry "passed out", lying on a woodpile, and summoned the police who took him to the hospital. When Perry recovered his senses the following day he complained that his pocketbook, containing $350, including two $100 bills, two $50 bills, two $20 bills and some $1 bills, was missing. When asked what happened to the money, Perry said: "I don't know what happened to my money. After I blacked out I don't remember anything." Later that night appellant was arrested for drunkenness, and upon being searched his pockets revealed $156.82, including one $100 bill, one $50 bill, one $5 bill, a $1 bill, and 82 cents in change. He was not able to account for the possession of this money or as to where it came from. Jones was also arrested, and upon questioning he led the officers to the place where the pocketbook of Perry had been hidden and showed the officers where he had hidden $150 of the money behind the door casing in his home.

At the close of the evidence for the Commonwealth, appellant moved for a directed verdict of not guilty on the grounds that the Commonwealth had failed to prove that the money was stolen from Perry, and that the money found in appellant's possession was not positively identified as the money belonging to Perry. The trial court denied the motion. Appellant asserts this was error, and also attacks the instructions given by the trial court.

The question for us to decide is whether the proof of the Commonwealth as above outlined extended any further than the creation of a mere suspicion that the appellant committed the larceny with which he was charged. It was shown by the evidence, and not disputed, that Perry had $350 upon his arrival in Mt. Sterling, consisting of two $100 bills, two $50 bills, two $20 bills, and some $1 bills, and that a $100 bill, a $50 bill, a $5 bill, a $1 bill, and 82 cents in change were found on appellant, and that he could not account for the source of this money. In a case very similar to this one, this court said, when such a contention was made:

"In cases of theft of money if the Commonwealth should be required to prove that money found on an accused is the identical bills claimed to have been stolen, only on rare occasions could a conviction be had. In some instances bills may be marked or bear other peculiar evidence of identity, but such is a rare exception." Alder v. Commonwealth, 277 Ky. 136, 125 S. W.2d 986, 990.

The case of Davis v. Commonwealth, 154 Ky. 774, 159 S.W. 607, is somewhat

similar to the case at hand, and conviction was sustained. We conclude that the chain of circumstances presented by the evidence in this case was sufficient to support the conviction.

■ It is next contended that the instructions given were erroneous. The court gave instructions both as to the commission of the offense itself by appellant and as to his aiding and abetting Jones. In the former, the jury was required to believe beyond a reasonable doubt " * * * that C. W. McVey did wilfully and feloniously take, steal, and carry away * * *." However, in the aiding and abetting instruction the word "wilfully" was omitted, and the jury was required to find beyond a reasonable doubt that appellant " * * * did unlawfully and feloniously aid, abet, encourage and assist * * *." It is claimed that the omission of the word "wilfully" constituted prejudicial error. None of the cases cited by appellant to support this contention are in point. This court has held in a homicide case that "feloniously" means proceeding from an evil heart or purpose, done with deliberate intention of committing a crime. Garrett v. Commonwealth, 215 Ky. 484, 285 S.W. 203. In another case where this same contention was made, this court ruled that "The word 'felonious' is defined by a lexicographer as meaning malignant, or malicious, and when an act is charged to have been done 'feloniously' it certainly embraces the idea that it was done with a deliberate, evil intent." Aikman v. Commonwealth, 18 S.W. 937, 939, 13 Ky.Law.Rep. 894. Thus, we find that the omission of the word "wilfully" was not error, since use of the word "feloniously" encompassed it, and that the word "felonious" means and includes all that the word "wilfully" imparts. Gatewood v. Commonwealth, 215 Ky. 360, 285 S.W. 193.

■ Appellant next contends that the trial court erred in instructing the jury on appellant's defense of drunkenness, in that the jury was only required to "believe from the evidence" and not to believe from the evidence beyond a reasonable doubt. It is a well settled principle of law, which should require no discussion, that facts establishing accused's guilt must be proved beyond a reasonable doubt, but that evidence tending to establish a defense need only be believed and that a defendant in a criminal case is not required to make out a defense beyond a reasonable doubt. Gibson v. Commonwealth, 248 Ky. 601, 59 S.W.2d 573; Harrod v. Commonwealth, 222 Ky. 248, 300 S.W. 625.

■ The last argument is that the court erred in its instruction on drunkenness in that the instruction not only required the jury to believe that appellant was so drunk that he did not have the intent to commit the crime but required it also to find that he was so drunk that *he could not* have had the requisite intent. All of the evidence tends to show that he was not too drunk to know what he was doing or to entertain felonious intent. Throughout the course of the testimony of appellant, in answer to certain questions, he would say or imply that he was so drunk that he did not know about certain matters, but his testimony as a whole clearly discloses that he remembered and understood in detail all that occurred on that day. He told a well-connected story about all of his maneuvers and transactions. He clearly traced his whereabouts all during the day and gave account for all of his actions. It appears that his memory was clear and that he knew everything that occurred when he could answer a question favorable to himself, but when confronted with difficulty in giving a plausible answer to a question he then claimed to have been too drunk to have remembered it. Unless there is evidence which tends to prove the mental condition of the accused was such that at the time he committed the acts of which he was accused he was not capable of having an intent to take the goods with the purpose of appropriating them to such an extent as to permanently deprive the owner of his property, then an instruction upon that subject is unauthorized. Brennon v. Commonwealth, 169 Ky. 815, 185 S.W. 489. We doubt that the evidence justified an instruction on drunkenness at all, but giving it certainly was not prejudicial.

The judgment is affirmed.